COMMISSIONER OF REVENUE *vs.* ROBERT MULLINS.

Suffolk. October 8, 1998. - November 19, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ. ·

*Controlled Substances. Taxation,* Controlled substances. *Constitutional Law,* Double jeopardy. *Statute,* Construction.

Discussion of the double jeopardy clause of the Fifth Amendment to the United States Constitution as implicated by a controlled substances tax, and discussion of the factors set forth in *Department of Revenue of Mont.* v. *Kurth Ranch,* 511 U.S. 767 (1994), determinative of whether such a tax had punitive characteristics that subject it to the constraints of the double jeopardy clause. [409-412] ·
Where G. L. c. 64K imposes on dealers of controlled substances a high rate of taxation for an obvious punitive purpose, conditioned on a dealer's criminal conduct and levied on confiscated contraband that the dealer never lawfully possessed, this court concluded that the assessment of the tax on essentially the same activity for which the dealer had received criminal sanctions was punishment prohibited by principles of double jeopardy. [412-417]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted an application for direct appellate review.

*Pierce O. Cray,* Assistant Attorney General, for Commissioner of Revenue.

*William B. VanLonkhuyzen* for the taxpayer.

GREANEY, J. This is an appeal by the Commissioner of Revenue (commissioner), pursuant to G. L. c. 58A, § 13, from a decision of the Appellate Tax Board (board), abating a controlled substances tax (CST) assessed against Robert Mullins (taxpayer) pursuant to G. L. c. 64K. Relying primarily on the United States Supreme Court's decision in *Department of Revenue of Mont.* v. *Kurth Ranch,* 511 U.S. 767 (1994) (*Kurth Ranch*), the board determined that the assessment constituted a "punishment" for purposes of the double jeopardy clause of the Fifth Amendment to the United States Constitution. Because the

assessment had been imposed separately from proceedings lead-ing to the taxpayer's conviction under G. L. c. 94C, the board concluded that it constitutes a separate punishment barred by the double jeopardy clause, and must be abated.[1] We granted the parties' joint application for direct appellate review, and we now affirm.[2]

1. General Laws c. 64K, inserted by St. 1993, c. 110, § 127, imposes a CST on "dealers" of marihuana and other controlled substances referenced in G. L. c. 94C. See G. L. c. 64K, § 1. A "dealer" is defined as "a person who, in violation of Mas-sachusetts law, manufactures, produces, ships, transports, or imports into the commonwealth or in any manner acquires or possesses more than forty grams of marihuana," or other speci-fied amounts of controlled substances. *Id.* The statute prohibits possession by a dealer of any marihuana or controlled substance on which a tax is imposed unless the tax has been paid as evidenced by stamps. G. L. c. 64K, § 4. The rate of tax, established in § 8 of the statute, is $3.50 per gram of mari-

---

[1] In this case, the taxpayer received a notice of assessment of the controlled substances tax (CST) from the Department of Revenue (department) after criminal proceedings had commenced. Therefore, we are not confronted with the question whether assessment of the tax may bar a subsequent criminal prosecution. Compare *Clifft* v. *Indiana Dep't of State Revenue*, 660 N.E.2d 310 (Ind. 1995), with *Ex parte Ward*, 964 S.W.2d 617 (Tex. Crim. App. 1998). In any event, that question is not likely to be raised given the nature of G. L. c. 64K.

[2] We note at the outset that courts that have relied on *Department of Revenue of Mont.* v. *Kurth Ranch*, 511 U.S. 767 (1994) (*Kurth Ranch*), in considering whether drug tax statutes similar to the Massachusetts tax are punitive for purposes of the double jeopardy clause of the Federal Constitution are divided. Compare *Lynn* v. *West*, 134 F.3d 582 (4th Cir.), cert. denied, 119 S. Ct. 47 (1998) (finding drug tax punitive although double jeopardy question not at is-sue); *People* v. *Maurello*, 932 P.2d 851 (Colo. App. 1997) (finding drug tax punitive for purposes of double jeopardy); *Wilson* v. *Department of Revenue*, 169 Ill. 2d 306 (1996); *Bryant* v. *State*, 660 N.E.2d 290 (Ind. 1995) (same), cert. denied, 519 U.S. 926 (1996); *Desimone* v. *State*, 111 Nev. 1221 (1995) (same), vacated and remanded, 518 U.S. 1030 (1996), and *Brunner* v. *Collec-tion Div. of the Utah State Tax Comm'n*, 945 P.2d 687 (Utah 1997), with *Mil-ner* v. *State*, 658 So. 2d 500 (Ala. Civ. App. 1994) (upholding drug tax); *Cov-elli* v. *Commissioner of Revenue Servs.*, 235 Conn. 539 (1995) (same), vacated and remanded, 518 U.S. 1031, aff'd after remand, 239 Conn. 257 (1996), cert. denied, 520 U.S. 1174 (1997); *State* v. *Lange*, 531 N.W.2d 108 (Iowa 1995) (same); *State* v. *Gulledge*, 257 Kan. 915 (1995) (same); *State* v. *Stubblefield*, 249 Neb. 436 (1996); *State* v. *Ballenger*, 123 N.C. App. 179 (1996); *Mc-Mullin* v. *South Carolina Dep't of Revenue & Taxation*, 321 S.C. 475 (1996) (same).

huana. Measurements are based on the entire quantity "in the dealer's possession," without adjustment for impurities or dilutions of the marihuana or other controlled substance. G. L. c. 64K, § 7.

The commissioner is charged with enforcing the statute, G. L. c. 64K, § 2, and the requisite payments are to be made by dealers through utilization of a form developed by the commissioner, subject to the proviso that "[d]ealers shall not be required to give their name, address, social security number or other identifying information on such form." Id.

Additional features of the statute include that persons lawfully in possession of marihuana or a controlled substance are explicitly exempted from payment of the CST, G. L. c. 64K, § 6; payment of the tax does not provide immunity from prosecution pursuant to Massachusetts law, G. L. c. 64K, § 5; a one hundred per cent penalty is imposed on a dealer's failure voluntarily to pay the CST immediately on acquisition or possession of the threshold quantity of contraband, G. L. c. 64K, § 9; and failure to pay the tax is a felony, id.

2. The board found the following facts.[3] The taxpayer was arrested on December 30, 1993, while he was attempting to sell to an undercover State police informant roughly fifty pounds of marihuana, a class D controlled substance, for approximately $1,600 a pound. After an additional forty pounds of marihuana were discovered at the taxpayer's home, the Commonwealth charged him with trafficking in marihuana in a quantity over fifty pounds and under one hundred pounds, G. L. c. 94C, § 32E (a) (1), and conspiracy to traffic in marihuana, G. L. c. 94C, § 40. The taxpayer ultimately entered a guilty plea on April 18, 1996, to the lesser charge of possession with intent to distribute marihuana (less than fifty pounds), G. L. c. 94C, § 32C (a). He was sentenced to a term of imprisonment.

The taxpayer also settled related civil forfeiture actions by forfeiting to the office of the district attorney for the Norfolk district approximately $120,000 in bank account deposits, his automobile, and cash in his home.

In February, 1994, the district attorney's office advised the criminal investigation bureau of the Department of Revenue

---

[3]The parties presented the matter to the board on cross motions for summary judgment, in part, on the ground that the relevant subsidiary facts are undisputed.

(department) that the confiscated marihuana did not have CST stamps affixed. Following an investigation by a departmental criminal investigator, the commissioner issued to the taxpayer a notice of assessment in the amount of $272,092, representing the tax deficiency calculated pursuant to G. L. c. 64K, § 8, and the one hundred per cent penalty added by G. L. c. 64K, § 9. The tax period referenced on the notice of assessment was identified only by the date of arrest. The taxpayer did not possess the marihuana at any time during the department's preassessment investigation or at the time of assessment.

No "dealer" has voluntarily complied with the G. L. c. 64K taxing scheme. In fact, the tax assessment at issue is one of only two assessments of tax deficiencies made pursuant to G. L. c. 64K since its enactment. In both instances, assessments were made against "dealers" who previously had been arrested for controlled substances offenses. Moreover, in each instance the matter was brought to the department's attention by law enforcement personnel, and the tax applied to the specific contraband seized in connection with the criminal matter.

The commissioner is not otherwise engaged in administrative enforcement activity to improve compliance with the tax, independent of criminal law enforcement. Voluntary compliance is the only available mechanism for tax collection apart from postarrest assessments.

3. The double jeopardy clause of the Fifth Amendment to the United States Constitution prevents multiple punishments for the same offense. *Powers* v. *Commonwealth*, 426 Mass. 534, 537 (1998). See *Luk* v. *Commonwealth*, 421 Mass. 415, 419 (1995), citing *North Carolina* v. *Pearce*, 395 U.S. 711, 717 (1969).[4] In determining whether there is a double jeopardy violation, the particular sanction's label of "criminal" or "civil" is not controlling, and simply because the Legislature has designated the sanction a "tax" does not immunize it from double jeopardy scrutiny. *Kurth Ranch, supra* at 779. See *United States* v. *Ursery*, 518 U.S. 267, 282 (1996). "[T]here comes a time in the extension of the penalizing features of the so-called tax when it loses its character as such and becomes a mere penalty with the characteristics of regulation and punishment." *Kurth Ranch, supra*, quoting *A. Magnano Co.* v. *Hamilton*, 292 U.S. 40, 46 (1934).

---

[4]The board rested its decision exclusively on Federal grounds.

The United States Supreme Court, considering a Montana drug tax similar to the CST imposed under G. L. c. 64K, delineated the analysis for determining whether a tax is a punishment in *Kurth Ranch*. The Court expressly rejected reliance on the mode of analysis otherwise applied in determining whether a civil penalty is remedial or punitive, *id.* at 777, noting that "tax statutes serve a purpose quite different from civil penalties." *Id.* at 784. The Court agreed with that part of Chief Justice Rehnquist's dissent in which he stated that the approach, at that time prescribed in *United States* v. *Halper,* 490 U.S. 435 (1989), "simply does not work in the case of a tax statute." *Id.* at 784; *id.* at 787 (Rehnquist, C.J., dissenting). Although in *Hudson* v. *United States,* 522 U.S. 93, 96 (1997), the Court "disavow[ed] . . . [the] method of analysis" used in *United States* v. *Halper, supra* at 448, it did not retreat from its earlier conclusion that a different analytical approach is appropriate for examining tax statutes, and nothing in the Court's *Hudson* decision indicates that the mode of examination employed in *Kurth Ranch* is no longer appropriate in the tax context.[5] Indeed, the *Hudson* Court acknowledged, with apparent approval, that *Kurth Ranch* engaged in the proper analysis where the Court had

[5]We previously have stated that *Hudson* v. *United States,* 522 U.S. 93 (1997), "clarified the proper analysis for determining whether civil sanctions constitute punishment." *Powers* v. *Commonwealth,* 426 Mass. 534, 537-538 (1998). In *Hudson,* the United States Supreme Court reaffirmed a traditional two-part analysis for determining whether a particular sanction is civil or criminal. *Id.* at 96, citing *United States* v. *Ward,* 448 U.S. 242, 248-249 (1980). A court "must first ask whether the Legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.' " *Powers* v. *Commonwealth, supra* at 538, quoting *Hudson* v. *United States, supra* at 99. If the Legislature intended a civil sanction, then the second step is "to determine whether the statutory scheme was 'so punitive either in purpose or effect' so as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.' " *Id.* at 538-539, quoting *Hudson* v. *United States, supra* at 99. A court must "look only to 'the statute on its face' to determine whether a penalty is criminal in nature," *Hudson* v. *United States, supra* at 104, quoting *Kennedy* v. *Mendoza-Martinez,* 372 U.S. 144, 169 (1963), and " 'only the clearest proof' will suffice to override legislative intent." *Id.* at 100, quoting *United States* v. *Ward, supra* at 249.

Summarizing the analysis applied in *Kurth Ranch,* the Court in *United States* v. *Ursery,* 518 U.S. 267, 282 (1996), stated: "We first established that the fact that Montana had labeled the civil sanction a 'tax' did not end our analysis. We then turned to consider whether the tax was so punitive as to constitute a punishment subject to the Double Jeopardy Clause." Thus, the analysis utilized in *Kurth Ranch,* in effect, encompasses the two-part test of

determined that "the presence of a deterrent purpose or effect is not dispositive," and applied a "*Kennedy*-like test . . . before concluding that Montana's dangerous drug tax was 'the functional equivalent of a successive criminal prosecution.' " *Hudson* v. *United States, supra* at 102 n.6 (referring to the seven-factor analysis utilized in *Kennedy* v. *Mendoza-Martinez,* 372 U.S. 144, 168-169 [1963]). See *United States* v. *Ursery, supra* at 282 (discussing *Kurth Ranch* with approval); *Lynn* v. *West,* 134 F.3d 582 (4th Cir.), cert. denied, 119 S. Ct. 47 (1998).[6]

In *Kurth Ranch,* the Montana department of revenue sought to assess a tax on the illegal possession of marihuana pursuant to Montana's Dangerous Drug Tax Act after the State had imposed a criminal penalty for the same conduct. *Kurth Ranch, supra* at 769-770. Under Montana's statute, the taxpayer had no obligation to pay any tax unless and until he was arrested. *Id.* at 771. In determining whether the tax had "punitive characteristics that subject[ed] it to the constraints of the Double Jeopardy Clause," *id.* at 778-779, the Court examined four factors. The first factor was the "high rate of taxation" provided for in the statute, *id.* at 780-781, and the second was the "obvious deterrent purpose" of the tax. *Id.* The Court observed that, while

*Hudson.*

It appears that the United States Court of Appeals for the Fourth Circuit is the only court (State or Federal) that has reviewed a statute similar to G. L. c. 64K after the Supreme Court's decision in *Hudson.* In that case, the court relied on *Kurth Ranch* to conclude the statute was punitive, merely alluding to *Hudson* in two footnotes. See *Lynn* v. *West,* 134 F.3d 582 (4th Cir.), cert. denied, 119 S. Ct. 47 (1998).

[6]The board's decision was issued prior to the release of the Supreme Court's opinion in *Hudson* v. *United States, supra,* and thus, the board did not have the benefit of that decision in ruling on the taxpayer's application for abatement. While the commissioner asserts that the board applied the wrong legal standard in determining that the CST imposed a second punishment for the taxpayer's criminal offense because the board failed to employ the analytical approach set forth in *Hudson,* he also recognizes the distinction drawn by the Supreme Court in analyzing civil penalty and tax statutes. In particular, the commissioner's brief notes that "*Hudson*'s description of *Kurth Ranch* as '*Kennedy*-like' in its analysis . . . suggests that the *Kurth Ranch* elements supplement the *Kennedy* factors in the tax setting."

The board properly relied on *Kurth Ranch,* and specifically analyzed the applicable provisions of G. L. c. 64K in applying the *Kurth Ranch* test. That the board additionally relied on the commissioner's administration of the statute does not render the analysis improper where the statute's voluntary payment option appears to be a mere fiction because the commissioner does not otherwise enforce the statute except on receipt of a referral from a law enforcement agency.

these features of the tax may support the conclusion that the tax is a punishment, "in and of themselves, [they] do not necessarily render the tax punitive." *Id.* at 781. See *Hudson* v. *United States, supra* at 102 n.6.

In concluding that a double jeopardy violation existed, the Court went on to rely on two "[o]ther unusual features . . . [which] set the Montana statute apart from most taxes," *id.* at 781, namely (1) that the tax incorporated illegal conduct into the elements necessary for taxability such that the tax was conditioned on the commission of a crime, *id.* at 781-782, and, (2) that the tax was levied on " 'possession' of goods that no longer exist and that the taxpayer never lawfully possessed." *Id.* at 783. It was through the additional analysis triggered by these features of Montana's drug tax that the Court was able to discern whether an imposition labeled as a tax "departs so far from normal revenue laws as to become a form of punishment." *Id.* at 783.[7] The Court ultimately concluded that the Montana tax amounted to a separate punishment for the same offense and thus was constitutionally unlawful. *Id.*

That the CST imposes a high rate of taxation and has a deterrent purpose is evident in G. L. c. 64K, and cannot be persuasively controverted by the commissioner.[8] It is the presence in G. L. c. 64K of the third and fourth *Kurth Ranch* factors that provide the "clearest proof" that the sanction imposed under the statute is intended to be punitive. See *Hudson* v. *United States, supra* at 100.

The CST is clearly conditioned on the commission of a crime. While assessment of the CST does not specifically depend on arrest, criminal activity is required before the tax is imposed as the statute makes the tax exclusively applicable to illegal activity. In particular, only acquisitions or possession over threshold quantities "in violation of Massachusetts law" result in "dealer" status under the act, and thus subject the individual to the CST. G. L. c. 64K, § 1. Moreover, lawful possession of marihuana

---

[7]*United States* v. *Ursery*, 518 U.S. 267, 282 (1996), confirms this reading of *Kurth Ranch*. The *Ursery* Court summarized the *Kurth Ranch* holding by noting that "[readily apparent] differences between the marijuana tax imposed by Montana and the typical revenue-raising tax" marked the Montana act as punishment. *Id.*

[8]The rate of tax on marihuana at $3.50 per gram is equivalent to that imposed by the Montana Dangerous Drug Tax Act. See *Kurth Ranch, supra* at 770. With 28.349 grams in one ounce, the Massachusetts tax rate totals $99.22 per ounce, compared to $100 per ounce under Montana's drug tax.

and controlled substances is outside the scope of taxability by operation of two statutory provisions: the definition of "dealer" in § 1, and the specific exclusion in § 6. This nexus between the CST and criminal conduct is emphasized by the provision precluding construction of the CST to give dealers immunity from prosecution. G. L. c. 64K, § 5.

Conditioning the tax on unlawful possession is "significant of penal and prohibitory intent." *Kurth Ranch, supra* at 781, quoting *United States* v. *Constantine*, 296 U.S. 287, 295 (1935).[9] When the "taxed activity is completely forbidden . . . the legitimate revenue-raising purpose that might support such a tax could be equally well served by increasing the fine imposed upon conviction." *Id.* at 782.[10] Cf. *United States* v. *Sanchez*, 340 U.S. 42, 43-44 (1950) (where Supreme Court upheld the Federal Marihuana Tax Act, which, in contrast to G. L. c. 64K, contemplated lawfully regulated dealings in marihuana).[11]

The commissioner relies on the decisions of other courts that have distinguished *Kurth Ranch* on the basis that the Montana statute specifically imposed the tax after the taxpayer was arrested for possession of the contraband, rather than "immediately upon . . . possession" as provided in G. L. c. 64K,

[9]Although the Court in *Kurth Ranch* specifically stated that "[a]s a general matter, the unlawfulness of an activity does not prevent its taxation," *Kurth Ranch, supra* at 778, the Court found it "significant that the same sovereign that criminalized the activity also imposed the tax." *Id.* at 782 n.22. The Court noted, "most of our cases confirming that the unlawfulness of an activity does not prevent its taxation involve taxes on acts prohibited by other sovereigns." *Id.*, citing *United States* v. *Constantine*, 296 U.S. 287, 293 (1935) (involving a Federal excise tax on retail liquor sales that violated State law); *James* v. *United States*, 366 U.S. 213, 214 (1961) (involving Federal tax on embezzled money imposed on man who had pleaded guilty in State court to conspiracy to embezzle); *Marchetti* v. *United States*, 390 U.S. 39, 44-47 (1968) (involving Federal tax on gambling activities primarily prohibited under State law). The Court further noted "[t]he importance of the distinction between same sovereign proceedings and dual sovereign proceedings also is borne out by our cases holding that the Constitution does not prohibit successive prosecutions by different sovereigns based on the same conduct." *Kurth Ranch, supra* at 782-783 n.22.

[10]In this regard, the Court contrasted such a tax with other taxes imposed to deter disfavored (though legal) activities as well as to raise money, such as cigarette and alcohol taxes. *Kurth Ranch, supra* at 782.

[11]In *United States* v. *Sanchez*, 340 U.S. 42, 44 (1950), the Court noted that the tax "implements the congressional purpose of restricting traffic in marihuana to accepted industrial and medicinal channels." In any event, no double jeopardy challenge was at issue in that case.

§ 11. See, e.g., *Covelli* v. *Commissioner of Revenue Servs.*, 235 Conn. 539, 548-550 (1995), vacated and remanded, 518 U.S. 1031, aff'd after remand, 239 Conn. 257 (1996), cert. denied, 520 U.S. 1174 (1997); *Milner* v. *State*, 658 So. 2d 500, 502 (Ala. Civ. App. 1994); *State* v. *Lange*, 531 N.W.2d 108, 116 (Iowa 1995); *State* v. *Gulledge*, 257 Kan. 915, 922 (1995); *McMullin* v. *South Carolina Dep't of Revenue & Taxation*, 321 S.C. 475 (1996). This attempt to distinguish *Kurth Ranch* is unpersuasive, and we agree with the broader interpretation given *Kurth Ranch* by those courts concluding that taxes similar to G. L. c. 64K are punitive, by relying on the express limitation of the tax to unlawful activity. See *Lynn* v. *West, supra* at 590-591; *Wilson* v. *Department of Revenue*, 169 Ill. 2d 306, 314-315 (1996); *Bryant* v. *State*, 660 N.E.2d 290, 294 (Ind. 1995) (same), cert. denied, 519 U.S. 926 (1996). See also *Desimone* v. *State*, 111 Nev. 1221, 1225-1227 (1995), vacated and remanded, 518 U.S. 1030 (1996);[12] *Brunner* v. *Collection Div. of the Utah State Tax Comm'n*, 945 P.2d 687, 690-691 (Utah 1997). In our view, the similarity between the two tax schemes is more compelling than the difference. Although G. L. c. 64K is predicated on a voluntary payment scheme, and does not limit assessment of the CST to a time after arrest, its enforcement is invariably limited to individuals who have been arrested for drug crimes. The only two assessments under the statute have followed reference to the department by law enforcement personnel subsequent to an arrest for illegal possession. No dealers have voluntarily paid the tax, nor does the commissioner otherwise enforce the statute. "The existence of the voluntary payment option is at best illusory and does not . . . make the post-arrest imposition of the Tax any less a penalty for double jeopardy purposes." *People* v. *Maurello*, 932 P.2d 851, 853 (Colo. App. 1997).[13]

Thus, as in *Kurth Ranch*, "the tax assessment not only hinges on the commission of a crime, it also is exacted only after the taxpayer has been arrested for the precise conduct that gives

---

[12]The Supreme Court's remand order calls *United States* v. *Ursery, supra* (which did not implicate double jeopardy), to the attention of the Nevada Supreme Court. *Desimone* v. *State*, 111 Nev. 1221 (1995), vacated and remanded, 518 U.S. 1030 (1996), remains persuasive in its analysis of CSTs under *Kurth Ranch*.

[13]As Chief Justice Rehnquist wrote in his dissent in *Kurth Ranch*: "Because the activity sought to be taxed is illegal, individuals cannot be expected to voluntarily identify themselves as subject to the tax." *Kurth Ranch, supra* at 788 n.2 (Rehnquist, C.J., dissenting).

rise to the tax obligation in the first place." *Kurth Ranch, supra* at 781. "Persons who have been arrested for possessing marijuana constitute the entire class of taxpayers subject to the [CST]." *Id.* at 781-782. "The theoretical possibility that a drug dealer could voluntarily pay the [CST] does not take the tax out of the criminal penalty category. The unused statutory reporting and payment scheme, while clever, is not enough to distinguish *Kurth Ranch.* The [CST] is still based on a criminal act." *Lynn* v. *West, supra* at 591.

The fourth *Kurth Ranch* factor is also present in c. 64K because the tax has no logical relationship to lawful possession. No "dealer" has any ownership interest the law recognizes in goods the mere possession of which is criminal. See generally *United States* v. *Jeffers,* 342 U.S. 48, 52-54 (1951). Thus, the CST is levied on the possession of goods that the taxpayer never lawfully possessed in the first place. Furthermore, in practice, G. L. c. 64K is applied in such a manner that assessment invariably follows confiscation of the taxable contraband, and thus, as in *Kurth Ranch,* taxes the possession of contraband that no longer exists at the time the assessment is imposed. Such a tax "has an unmistakable punitive character." *Kurth Ranch, supra* at 783. Because the tax is basically "imposed on criminals and no others, [it] departs so far from normal revenue laws as to become a form of punishment." *Id.*[14]

"If payment of the Drug Tax conferred legal ownership, then the tax would amount to nothing more than an expensive licensing or excise fee. The fact that it does not is another strong indication that the tax is a criminal penalty." *Lynn* v. *West, supra* at 592, comparing *Regal Drug Corp.* v. *Wardell,* 260 U.S. 386, 392 (1922) (holding that tax on liquor during Prohibition is penalty); *Lipke* v. *Lederer,* 259 U.S. 557, 561 (1922) (same); and *Fontenot* v. *Accardo,* 278 F. 871, 875 (5th Cir. 1922) (same), with *Sonzinsky* v. *United States,* 300 U.S. 506, 513-514 (1937) (upholding license tax on firearms and distinguishing cases where subject of tax is criminal); and *United States* v. *Doremus,* 249 U.S. 86, 94 (1919) (upholding constitutionality of Harrison

[14]This feature of the CST as it has operated since G. L. c. 64K was enacted distinguishes the tax from traditional income taxes exacted on illegal activities. A taxpayer who fails to pay income tax on income from illegal activities is treated no differently from any other person who fails to pay a tax on income from whatever source derived. The taxpayer is not taxed merely because of his illegal activity, as is the case with the CST.

Narcotic Drug Act, which imposed tax on "lawful business" in coca and opium).

4. We are unpersuaded by the commissioner's contention that the CST does not constitute the "same offense" as the offense for which the taxpayer entered a guilty plea in his criminal case (G. L. c. 94C, § 32C [a]).[15] Where the same act constitutes a violation of two distinct statutory provisions, "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger* v. *United States*, 284 U.S. 299, 304 (1932). See *United States* v. *Dixon*, 509 U.S. 688, 696 (1993) (reaffirming *Blockburger*).

The CST punishes any "dealer" who "possesses" more than forty grams of marihuana and fails to pay the tax on the contraband. A "dealer" is obviously someone who intends to sell or distribute his or her product. Thus, the CST punishes a person who possesses more than forty grams of marihuana and intends to sell or distribute it. This is the precise crime to which the taxpayer pleaded guilty. That crime and the activity to which the CST is applied are so closely related in fact as to constitute in substance an identical offense for purposes of double jeopardy.[16] See *Commonwealth* v. *Walker*, 426 Mass. 301, 304 (1997); *Commonwealth* v. *Sanchez*, 405 Mass. 369, 381 (1989).

5. Our conclusion does not render G. L. c. 64K invalid, but only requires that taxes assessed under the statute be considered punishment for double jeopardy purposes. The Fifth Amendment does not prevent imposition of the tax; it merely restricts the ability of the Commonwealth to assess the tax against those

---

[15]General Laws c. 94C, § 32C (*a*), provides that "[a]ny person who knowingly or intentionally manufactures, distributes, dispenses or cultivates, or possesses with intent to manufacture, distribute, dispense or cultivate [marihuana] shall be [punished as specified]."

[16]In concluding that the CST and the crime of which the taxpayer was convicted are the functional equivalent of each other, we have considered and rejected the commissioner's argument that the "more than forty grams" provision in the CST creates a distinct element which makes violation of the statute an independent crime.

Our conclusion is dictated by the circumstances of this case. Because there was no dispute as to the quantity of marihuana that was found in the taxpayer's possession, the substantive facts supporting imposition of the CST are identical to those which the Commonwealth had to prove in the criminal matter, except for the additional factor of knowledge or intent in the criminal case that distinguishes the greater from the lesser offense.

who have suffered criminal penalties for the same possession of marihuana or controlled substances. See *Covelli* v. *Commissioner of Revenue Servs.*, 235 Conn. 539, 559 (1995) (Katz, J., dissenting).

6. Because the CST constitutes punishment within the meaning of the double jeopardy clause, the decision of the board must be affirmed.

*So ordered.*