STATE OF NORTH CAROLINA v. FRANKLIN BALLENGER

No. COA95-847

(Filed 16 July 1996)

**Narcotics, Controlled Substances, and Paraphernalia § 207 (NCI4th)— possession of two pounds of marijuana—tax assessment—not double jeopardy**

The trial court erred by dismissing charges arising from possession of two pounds of marijuana on double jeopardy grounds where defendant had paid a tax assessment under the North Carolina Controlled Substance Act. N.C.G.S. § 105-113.105 *et seq.*, as it was in effect at all times pertinent to this case, contains neither of the "unusual features" upon which the United States Supreme Court relied in *Montana Dept. of Rev. v. Kurth Ranch*, 128 L.Ed. 767, in concluding that the Montana statute violated double jeopardy in that the North Carolina tax is not predicated upon whether the taxpayer has been arrested or charged with criminal conduct, nor is it assessed on property that necessarily has been confiscated or destroyed. The North Carolina statute is a legitimate and remedial effort to recover revenue from those persons who would otherwise escape taxation and does not have such fundamentally punitive characteristics as to render it violative of the prohibition against multiple punishments for the same offense contained in the Double Jeopardy Clause.

**Am Jur 2d, Drugs and Controlled Substances § 192.**

Judge SMITH dissenting.

Appeal by the State from order entered 5 May 1995 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 15 April 1996.

*Attorney General Michael F. Easley, by Assistant Attorney General Christopher E. Allen, for the State.*

*James H. Price, III, and Charles L. Morgan, Jr., for defendant-appellee.*

MARTIN, John C., Judge.

The State of North Carolina appeals from an order of the trial court dismissing criminal charges against defendant, Franklin

Ballenger, for violation of the North Carolina Controlled Substances Act, G.S. § 90-86 *et seq.* (1993). The facts of this case are undisputed and are as follows: On 15 September 1994, defendant was found in possession of two pounds of marijuana in Guilford County, North Carolina. He was arrested and charged with felonious possession of marijuana, and possession with intent to sell or deliver marijuana, in violation of G.S. § 90-95(a). Pursuant to G.S. § 105-113.105 *et seq.* (1992), the North Carolina Controlled Substance Tax, the North Carolina Department of Revenue issued a controlled substance tax assessment against defendant.

Defendant paid the tax assessment in the full amount of $3,837.24, including tax, interest, and penalty, on 19 April 1995. Defendant moved to dismiss the criminal charges for possession of the controlled substances, alleging that his criminal prosecution would violate the prohibition against successive punishments for the same offense contained in the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution and guaranteed under the "law of the land" clause of Article I, § 19 of the North Carolina Constitution. The trial court granted defendant's motion, and the State appeals pursuant to G.S. § 15A-1445(a)(1).

"The Double Jeopardy Clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense . . . ." *State v. Gardner*, 315 N.C. 444, 451, 340 S.E.2d 701, 707 (1986) (citations omitted). The "law of the land" clause incorporates similar protections under the North Carolina Constitution. *See* N.C. Const. art. I, § 19. In this case, the issue is whether the assessment and collection of the North Carolina Controlled Substance Tax pursuant to G.S. § 105-113.105 *et seq.*, constitutes punishment so as to bar the subsequent prosecution and punishment of defendant for criminal possession of the same drugs. For the following reasons, we conclude that it does not and we reverse the trial court's dismissal of the criminal charges.

The trial court expressly based its order upon the decision of the United States Supreme Court in *Montana Dept. of Rev. v. Kurth Ranch*, 511 U.S. —, 128 L. Ed. 2d 767 (1994), a case in which the Court subjected Montana's tax statute imposing a tax on the possession and storage of dangerous drugs to double jeopardy analysis. The Supreme Court held that Montana's assessment of the tax on the possession of illegal drugs in a separate proceeding after the State had

imposed a criminal penalty arising from the same conduct amounted to "a second punishment within the contemplation of [the Double Jeopardy Clause . . . .]" *Kurth Ranch*, 511 U.S. at ——, 128 L. Ed. 2d at 782 (citations omitted).

In *Kurth Ranch*, Montana law enforcement officials raided a farm operated by members of the Kurth family and found marijuana plants and other contraband, all of which was confiscated and presumably destroyed. In a state criminal proceeding, the Kurths pled guilty to state drug charges and were sentenced for the offenses. In a separate proceeding, the Montana Department of Revenue attempted to collect from the Kurths almost $900,000.00 in taxes pursuant to the Montana Dangerous Drug Tax Act, Mont. Code Ann. § 15-25-111 *et seq.* (1987). The Dangerous Drug Tax Act imposed "a tax 'on the possession and storage of dangerous drugs' ", and was "to be 'collected only after any state or federal fines or forfeitures [had] been satisfied.' " *Kurth Ranch* 511 U.S. at ——, 128 L. Ed. 2d at 773, (*quoting* Mont. Code Ann. §§ 15-25-111(1) and 15-25-111(3)). The tax was either ten percent of the assessed market value of the drugs as determined by the Montana Department of Revenue or a specified amount per ounce depending on the drug, (for example, $100.00 per ounce for marijuana, and $250.00 per ounce for hashish), whichever was greater. *Id.* The Montana statute also expressly provided for the Montana Department of Revenue to adopt rules to administer and enforce the tax. *Id.* Under rules adopted by that Department, the taxpayer was required to file a return within seventy-two hours of his or her arrest. *Id.* The taxpayer, however, had no obligation to file a return or to pay any tax unless and until the taxpayer was arrested. *Id.* at ——, 128 L. Ed. 2d at 774.

The Kurths challenged the constitutionality of the Montana tax, and the lower courts invalidated the assessment as violative of the Double Jeopardy Clause. *Id.* at ——, 128 L. Ed. 2d at 774-75. The United States Supreme Court affirmed, holding that the tax violated the constitutional prohibition against successive punishments for the same offense. *Id.* The Court's analysis centered upon whether the Montana tax had "punitive characteristics that subject it to the constraints of the Double Jeopardy Clause." *Id.* at ——, 128 L. Ed. 2d at 778.

The Supreme Court noted "that neither a high rate of taxation nor an obvious deterrent purpose automatically marks this tax a form of punishment," although those attributes were "consistent with a punitive character." *Id.* at ——, 128 L. Ed. 2d at 779. The Montana tax was

found to be "remarkably high" - a significant part of the assessment was more than eight times the drug's market value. *Id.* Moreover, the Court found the Montana legislature had clearly intended the tax to deter people from possessing marijuana. *Id.* However, the Court concentrated on two "unusual features" of the Montana statute which set it apart from most taxes and which the Court found pivotal in holding that the tax was punitive and therefore, violative of the Double Jeopardy Clause. *Id.* at ——, 128 L. Ed. 2d at 779-81.

The first "unusual feature" which concerned the Court was that the so-called tax was conditioned upon the commission of a crime. The Court viewed this condition as "significant of penal and prohibitory intent rather than the gathering of revenue." *Id.* at ——, 128 L. Ed. 2d at 779-80. Further, the Court noted that it had relied on the absence of such a condition to uphold a federal marijuana tax on the grounds that that tax was a civil rather than criminal sanction because the tax was not contingent upon the taxpayer's criminal conduct. *Id.* at ——, 128 L. Ed. 2d at 780, (citing *U.S. v. Sanchez*, 340 U.S. 42, 95 L. Ed. 47 (1950)). Significantly, the Court stated that:

> [i]n this case, the tax assessment not only hinges on the commission of a crime, it also is exacted only after the taxpayer has been arrested for the precise conduct that gives rise to the tax obligation in this first place. Persons who have been arrested for possessing marijuana constitute the entire class of taxpayers subject to the Montana tax.

*Id.*

A second "unusual feature" of concern to the Court was the fact that, although the Montana statute characterized the tax imposed as a property tax, i.e., that is, a tax on the possession and storage of dangerous drugs, it was actually levied on goods the taxpayer neither owned nor possessed when imposed. *Id.* at ——, 128 L. Ed. 2d at 780-81. Because the tax was not assessed until and unless a taxpayer was arrested, the drugs presumably were already destroyed or no longer possessed when the tax was imposed. *Id.* at ——, 128 L. Ed. 2d at 781. The Court found this type of tax, "imposed on criminals and no others," as departing "so far from normal revenue laws as to become a form of punishment." *Id.* In summary, the Court concluded that "[t]aken as a whole, this drug tax is a concoction of anomalies, too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis." *Id.*

The North Carolina Controlled Substance Tax, G.S. § 105-113.105 *et seq.*, as it was in effect at all times pertinent to this case, however, contains neither of the "unusual features" upon which the Supreme Court relied in *Kurth Ranch* to conclude that Montana's dangerous drug tax constituted punishment for double jeopardy purposes. The North Carolina Controlled Substance Tax is not predicated upon whether the taxpayer in possession of the controlled substance has been arrested or charged with criminal conduct, nor is it assessed on property that necessarily has been confiscated or destroyed. Specifically, the North Carolina Controlled Substance Tax provides that a "tax is levied on controlled substances and counterfeit controlled substances possessed by dealers . . ." at various rates depending on the type of controlled substance possessed. N.C. Gen. Stat. § 105-113.107 (1992). A dealer is defined as:

> [a] person who in violation of G.S. 90-95 possesses, delivers, sells, or manufactures more than 42.5 grams of marijuana, seven or more grams of any other controlled substance or counterfeit controlled substance that is sold by weight, or 10 or more dosage units of any other controlled substance or counterfeit controlled substance that is not sold by weight.

N.C. Gen. Stat. § 105-113.106 (1992 & 1994 Cum. Supp.). The tax is due within forty-eight hours after the dealer possesses the substance in this State upon which the tax has not been previously paid as evidenced by a tax stamp. N.C. Gen. Stat. § 105-113.109 (1992). The tax obligation is not contingent upon the dealer's arrest which, in the normal course of events, would result in the confiscation and destruction of the substance. The dealer can satisfy his tax obligation by paying the tax upon acquisition of the substance and by then permanently affixing thereto stamps issued by the Secretary of Revenue to indicate payment. N.C. Gen. Stat. § 105-113.108 (1992). So long as the stamps remain affixed, no additional tax is thereafter due even though the substance may be handled by other dealers. N.C. Gen. Stat. § 105-113.109. Because the North Carolina tax becomes payable within forty-eight hours after the taxpayer comes into possession of the substance, it is not a tax on confiscated goods, as was the case with the Montana tax, which became due only upon the taxpayer's arrest for possession of the substance. To the contrary, the dealer is not required, when paying the tax, to disclose his or her identity, G.S. § 105-113.108, and any information obtained pursuant to this statute is confidential and cannot be used in a criminal prosecution other than a prosecution for failure to comply with the tax statute itself.

N.C. Gen. Stat. § 105-113.112 (1992 & 1994 Cum. Supp.). While we do not pretend to ignore that the high rate of taxation provided by the statute is intended to have a deterrent effect, "these features, [a high tax rate and a deterrent purpose,] in and of themselves, do not necessarily render the tax punitive . . . ." *Kurth Ranch*, 511 U.S. at ——, 128 L. Ed. 2d at 779 (citation omitted).

In our view, the North Carolina statute is a legitimate and remedial effort to recover revenue from those persons who would otherwise escape taxation when engaging in the highly profitable, but illicit and sometimes deadly activity of possessing, delivering, selling or manufacturing large quantities of controlled drugs. The General Assembly has expressly stated its purpose in enacting the tax as:

> The purpose of this Article is to levy an excise tax on persons who possess controlled substances and counterfeit controlled substances in violation of North Carolina law and to provide that a person who possesses such substances in violation of this Article is guilty of a felony. Nothing in this Article may in any manner provide immunity from criminal prosecution for a person who possesses an illegal substance.

N.C. Gen. Stat. § 105-113.105 (1992); *see also* N.C. Gen. Stat. § 105-113.105 (1995) (statute's purpose reworded to read, in pertinent part: "The purpose of this Article is to levy an excise tax to generate revenue for State and local law enforcement agencies and for the General Fund").

We hold that the North Carolina Controlled Substance Tax does not have such fundamentally punitive characteristics as to render it violative of the prohibition against multiple punishments for the same offense contained in the Double Jeopardy Clause. Therefore, the trial court erred in concluding that prosecution of defendant on the drug possession charges would subject him to double jeopardy in violation of the United States and North Carolina Constitutions. The order of the trial court is reversed, and this case is remanded for further proceedings in the trial division.

Reversed and remanded.

Chief Judge ARNOLD concurs.

Judge SMITH dissents.

STATE v. BALLENGER

[123 N.C. App. 179 (1996)]

Judge SMITH dissenting.

I respectfully dissent from the majority's opinion which reverses the trial court and remands.

Initially, it should be noted that this Court's analysis is based upon Chapter 105, Article 2D of the North Carolina General Statutes as it existed on 15 September 1994, the date on which Mr. Ballenger possessed the drugs. Subsequent changes were made to the statute by amendments. Such changes could render my analysis or that of the majority incorrect for cases arising after such changes. However, since the tax was assessed prior to the amendments, we do not address those provisions in the 1995 statute which were added or amended.

In its *Kurth Ranch* opinion, the United States Supreme Court did not hold that in order to find a tax violative of the Double Jeopardy Clause, the tax must contain each of the punishment aspects in the Montana Dangerous Drug Tax. Rather, the Court held that "[t]aken as a whole, [the Montana] drug tax is a concoction of anomalies, too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis." *Montana Dept. of Rev. v. Kurth Ranch*, 511 U.S. ——, ——, 128 L. Ed. 2d 767, 781 (1994). Violation of the Double Jeopardy Clause "can be identified only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state." *United States v. Halper*, 490 U.S. 435, 447, 104 L. Ed. 2d 487, 501 (1989). In *Kurth Ranch*, the Court followed an analysis similar to that set out in *Halper*, looking at the application of the assessment imposed by Montana and holding that it was unconstitutional as applied. Similarly, analysis of the application of the North Carolina Controlled Substance Tax as applied in the instant case leads to what I believe is an inescapable conclusion that criminal conviction following assessment of the tax is additional punishment violative of the Double Jeopardy Clause. For this reason, I dissent.

It should be recognized that the State could prosecute defendant Ballenger criminally if it had not previously punished him for the same offense through the assessment of the tax, or if it had assessed the tax in the same proceeding which resulted in his conviction. *See Kurth Ranch*, 511 U.S. at ——, 128 L. Ed. 2d at 778. The fact that defendant was criminally charged for the same conduct for which the North Carolina Controlled Substance Tax was previously assessed requires that we analyze the tax under a Double Jeopardy analysis.

The first question presented is whether a civil sanction, more specifically a tax, may constitute punishment for purposes of Double Jeopardy. The Supreme Court has held that a civil sanction may constitute punishment when "the sanction as applied in the individual case serves the goals of punishment." *Halper*, 490 U.S. at 448, 104 L. Ed. 2d at 501. The traditional goals of punishment include retribution and deterrence. "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can be explained only as also serving either retributive or deterrent purposes, is punishment . . . ." *Id.* at 448, 104 L. Ed. 2d at 502. A defendant who has already been subjected to such a sanction may not then be punished a second time through criminal prosecution. Whether an assessment is called "civil" or "criminal" or "tax" or "sanction" does not control when determining whether the assessment is violative of the Double Jeopardy Clause. *See Kurth Ranch*, 511 U.S. at ——, 128 L. Ed. 2d at 779; *Halper*, 490 U.S. at 447, 104 L. Ed. 2d at 501.

The United States Supreme Court, as well as the majority in the instant case, held that neither a high rate of taxation nor an obvious deterrent purpose automatically mark a tax as a form of punishment. However, both factors, while not dispositive, are "consistent with a punitive character." *Kurth Ranch*, 511 U.S. at ——, 128 L. Ed. 2d at 779. The Supreme Court found that those factors, coupled with other "unusual factors," clearly indicated the Montana tax was a second form of punishment, violative of the Double Jeopardy Clause.

The North Carolina Controlled Substance Tax contains many of the same elements as the Montana tax found to violate Double Jeopardy in *Kurth Ranch*. First, under the Montana statute some of the revenue generated by the tax is devoted to investigation, arrest and prosecution of individuals involved in distribution of drugs. Similarly, in North Carolina, seventy-five percent of the revenue raised from the tax is to be channeled to state and local law enforcement agencies responsible for investigating crimes involving controlled substances. N.C. Gen. Stat. § 105-113.113 (1992). The Montana statute requires law enforcement officers to notify the appropriate taxing authorities when drugs are seized and the North Carolina statutes do not. While the North Carolina statute does not contain the same explicit provision, it obviously encourages the same type of notification since the involved law enforcement agency receives the "lion's share" of any tax collected.

Second, the North Carolina assessment is clearly penal in nature. The statute fails to meet the traditional revenue-raising purpose of a

tax. Rather, the preamble provides that the purpose of the tax "is to levy an excise tax on persons who possess controlled substances and counterfeit controlled substances in violation of North Carolina law and to provide that a person who possesses such substances in violation of this Article is guilty of a felony." N.C. Gen. Stat. § 105-113.105 (1992). Obviously, the intent of the legislature was to impose an additional penalty upon persons who violate the North Carolina criminal drug possession laws. (Added evidence of the legislature's intent is a 1995 amendment providing an exemption to the tax to those persons in lawful possession of a controlled substance. N.C. Gen. Stat. § 105-113.107A (1995).)

Furthermore, like the Montana tax, the North Carolina tax on marijuana is extremely high at almost $100.00 per ounce. N.C. Gen. Stat. § 105-113.107 (1992). The tax is payable within 48 hours after a dealer acquires possession of a non-tax-paid controlled substance. If not paid within that time period, the possessor is subjected to a one hundred percent penalty fee and is guilty of a Class I felony. N.C. Gen. Stat. §§ 105-113.109 and -113.110 (1992). (Pursuant to a 1995 amendment, a possessor is now subjected to interest and a penalty of fifty percent of the tax. N.C. Gen. Stat. § 105-113.110A (1995).) Finally, the record reflects that the State has offered no evidence that the amount of the tax correlates in any way with the societal or remedial costs suffered by the State as a result of the taxed activities. These factors considered together are "consistent with a punitive character." *Id.* at ——, 128 L. Ed. 2d at 779.

Third, like the Montana tax, the North Carolina tax is conditioned on commission of a crime. The North Carolina tax is levied against a dealer who possesses more than 42.5 grams of marijuana, seven or more grams of any other controlled substance that is sold by weight, or 10 or more dosage units of any other controlled substance that is not sold by weight. N.C. Gen. Stat. § 105-113.106 (1992). Therefore, the only people subject to the tax are those who, by definition, engage or have engaged in criminal conduct. *See* N.C. Gen. Stat. § 90-95 (1993).

Fourth, like the Montana tax, the North Carolina tax allows assessment of the tax after confiscation or seizure of the controlled substances upon which the assessment is made. Unlike the Montana tax, the North Carolina assessment may also occur prior to or without an arrest, as it is due 48 hours after the dealer possesses the controlled substance. The fact that a person may be assessed a tax on a

substance that he neither owns or possesses when the tax is imposed is further evidence of the punitive nature of the tax. The State argues that, since the Montana tax was a "property" tax, while the North Carolina tax is labeled an "excise" tax, this somehow makes a difference in this analysis. However, the State offers no rationale as to why that would affect the tax's punitive character and I can perceive of none. The North Carolina tax and the Montana tax are both assessed upon persons who are in *possession* of a controlled substance covered by the tax statute.

Also, while the Montana tax expressly provided that the tax was to be collected only after state or federal fines or forfeitures had been satisfied, *Kurth Ranch*, 511 U.S. at ——, 128 L. Ed. 2d at 773, the North Carolina tax has no such comparable provision. The North Carolina tax presumably may be assessed and collected before any existent state or federal fines or forfeitures. In my opinion, this is yet another indication of the punitive nature of the North Carolina Controlled Substance tax.

Fifth, as the Supreme Court recognized, taxes upon illegal activities differ from mixed-motive taxes which a state may impose both to deter a disfavored activity and to raise money, such as cigarette and liquor taxes. By imposing such taxes, the State seeks to discourage certain activities. However, because the products provide benefits such as additional employment, consumer satisfaction and increased tax revenues, the government allows the manufacture, sale and use of those items so long as manufacturers, sellers and consumers pay high taxes that reduce consumption. These justifications disappear when a tax is imposed upon an activity which is completely prohibited by the same sovereign which taxes the activity. "[T]he legitimate revenue-raising purpose that might support such a tax could be equally well served by increasing the fine imposed upon conviction." *Kurth Ranch*, 511 U.S. at ——, 128 L. Ed. 2d at 780.

Like the Montana tax, the North Carolina Controlled Substance tax is unusual in that it contains punitive as well as tax characteristics. In my view, the North Carolina tax, taken as a whole, is significantly similar to the Montana tax which was found to be violative of Double Jeopardy in *Kurth Ranch*. Like that tax, the North Carolina tax assessed against Mr. Ballenger is a "concoction of anomalies, too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis." *Id.* at ——, 128 L. Ed. 2d at 781. For these reasons I would affirm the ruling of the able trial judge.