**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 98-4658

JEVAN ANDERSON,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at New Bern.
Terrence W. Boyle, Chief District Judge.
(CR-97-34-BO-1)

Argued: April 6, 2000

Decided: May 15, 2000

Before WILKINSON, Chief Judge, MOTZ, Circuit Judge,
and HAMILTON, Senior Circuit Judge.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** Douglas Everette Kingsbery, THARRINGTON SMITH,
L.L.P., Raleigh, North Carolina, for Appellant. John Howarth Ben-
nett, Assistant United States Attorney, Raleigh, North Carolina, for
Appellee. **ON BRIEF:** F. Hill Allen, THARRINGTON SMITH,
L.L.P., Raleigh, North Carolina, for Appellant. Janice McKenzie
Cole, United States Attorney, Anne M. Hayes, Assistant United States
Attorney, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jevan Anderson was convicted under 21 U.S.C. § 846 for conspiracy to distribute or possess with intent to distribute crack cocaine. On appeal, Anderson contends that the government presented insufficient evidence to support his conviction. Finding no merit to this contention, we affirm. Anderson also challenges his sentencing on a number of grounds. For the reasons set forth below, we affirm his sentence in part and vacate in part. We remand for resentencing under the applicable sentencing guidelines.

I.

In 1997, the Drug Enforcement Administration Mobile Enforcement Team conducted an investigation in Kinston, North Carolina. Jevan Anderson was one of the targets of this investigation. In November 1997, Anderson was arrested and charged under 21 U.S.C. § 846 for conspiracy to distribute or possess with intent to distribute crack cocaine. Trial commenced on August 24, 1998.

Government cooperating witnesses Kenya Jackson, Odell Caracter, and Carlos Ramos all testified to selling substantial amounts of crack cocaine to Anderson on multiple occasions. Jackson and Caracter also spoke of the close relations between Anderson and Sheridon Outlaw with respect to the drug trade. A paid government informant likewise testified. He recalled purchasing crack cocaine from Anderson on two separate occasions. Another of the government's witnesses, Shontelle Poole, also testified to making two crack cocaine purchases from Anderson. In addition, Poole stated that Anderson sold crack cocaine "every day."

DEA Special Agent Eric Kolbinsky then testified about the DEA searches of the house where Anderson sold drugs and the house

2

where Anderson resided. While the DEA agents found no drugs, they did find a set of electronic scales. Kolbinsky testified that such devices are commonly used for weighing drugs. In Anderson's bedroom, the DEA discovered $11,825 in cash. Some of the currency was bundled in $1000 amounts. Kolbinsky testified that such bundling is very common in the narcotics trade. Anderson offered no evidence and filed a motion to dismiss. The district court denied his motion. The jury then found Anderson guilty on the single conspiracy count.

On January 13, 1999, the district court held Anderson's sentencing hearing. The court found that Anderson was responsible for over 1,176 grams of crack cocaine plus a specified amount of powder cocaine which yielded a base offense level of 36. When combined with Anderson's criminal history category of IV, a guidelines sentencing range of 262 to 327 months resulted.

The court then addressed the government's request to enhance Anderson's sentence to a mandatory term of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A). The court concluded that Anderson had been convicted of two prior drug felonies, as required by § 841(b)(1)(A). As a result, the court sentenced Anderson to life in prison. Anderson now appeals both his conviction and sentencing. We address his claims in turn.

II.

Anderson argues that the evidence submitted by the government at trial was insufficient to support his conviction under § 846. Anderson specifically claims that the government did not prove that he was conspiring with others in furtherance of his drug trade. See United States v. Burgos, 94 F.3d 849, 858 (4th Cir. 1996) (en banc) ("[I]n addition to proving the existence of a conspiracy beyond a reasonable doubt, the Government must also prove a defendant's connection to the conspiracy beyond a reasonable doubt.").

We disagree. "When assessing the sufficiency of the evidence of a criminal conviction on direct review, `[t]he verdict of [the] jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it.'" United States v. Mitchell, No. 99-4008, 2000 WL 309298, at *5 (4th Cir. Mar. 27,

3

2000) (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)). Viewing the evidence in the light most favorable to the government, we conclude that there is substantial evidence that Anderson conspired with others to distribute crack cocaine.

Kenya Jackson and Odell Caracter both testified that Anderson acted in concert with Sheridon Outlaw. Jackson testified that the two men were frequently seen together and that Jackson jointly sold them drugs. Furthermore, Jackson described Outlaw as a "partner" of Anderson's. And Caracter recalled that Anderson and Outlaw were always together when he sold drugs to Outlaw.

Kenya Jackson also testified that on three occasions he sold Anderson a total of 482 grams of crack cocaine. See United States v. Mills, 995 F.2d 480, 485 n.1 (4th Cir. 1993) ("[W]e believe evidence of a buy-sell transaction, when coupled with a substantial quantity of drugs, would support a reasonable inference that the parties were coconspirators."). Odell Caracter and Carlos Ramos testified that they met Anderson through Jackson. Caracter sold Anderson over 510 grams of crack cocaine, and Ramos sold Anderson over 170 grams. The government's evidence also showed that Anderson used the services of Shontelle Poole in furtherance of his drug business. For example, Poole took Anderson to the Washington, D.C., area to purchase drugs. For her services, Poole was compensated with crack cocaine. The testimony of all of these witnesses provides substantial evidence that Anderson did in fact conspire with others to distribute crack cocaine.

III.

A.

With respect to sentencing, Anderson first contends that the district court clearly erred in calculating the amount of drugs attributable to him in determining his base offense level under the guidelines. Anderson initially asserts that the government did not adequately prove that the drugs referenced in Anderson's presentence report were part of the § 846 conspiracy. The government bears the burden of proving that drugs are attributable to a defendant by a preponderance of the evidence, see United States v. Lamarr, 75 F.3d 964, 972 (4th

4

Cir. 1996), and evidence introduced at trial can be used to satisfy this burden, see United States v. Williams, 986 F.2d 86, 90-91 (4th Cir. 1993). The government introduced evidence at trial showing that Jackson, Caracter, and Ramos all sold substantial amounts of crack cocaine to Anderson -- an amount totaling over 1,162 grams. The government's evidence also showed that Jackson introduced Anderson to both Caracter and Ramos. Based on this evidence, we cannot conclude that the district court clearly erred by concluding that these amounts of drugs were connected to a single conspiracy.

Anderson also contends that the district court clearly erred in attributing to him the 1,000 grams of the so-called "fish scale" cocaine. The error, if any, is clearly harmless. As Anderson concedes, the district court did not count the "fish scale" cocaine as crack cocaine, but rather as powder cocaine. Thus, the district court's crack cocaine total of 1,176.525 grams is unaffected. This quantity of crack cocaine is more than enough for base offense level 36 to apply to Anderson. See U.S. Sentencing Guidelines Manual § 2D1.1(c)(2)(1998) (Level 36 applies to offenses involving at least 500 grams but less than 1,500 grams of crack cocaine.).

B.

Anderson next contends that the district court erred by applying the 21 U.S.C. § 841(b)(1)(A) life imprisonment sentencing enhancement to him. Section 841(b)(1)(A) provides, "If any person commits a violation of this subparagraph or of section 849, 859, 860, or 861 of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release . . . ."

Anderson initially contends that because § 841(b)(1)(A) does not explicitly refer to § 846, this enhancement cannot apply to his § 846 conviction. While Anderson is correct in noting that § 841(b)(1)(A) does not explicitly list § 846, § 846 itself states, "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." (emphasis added). In this case, the object of Anderson's conspiracy was violating § 841, which makes it illegal to distribute

5

crack cocaine. Because § 846 adopts the § 841 penalty structure in full, the § 841(b)(1)(A) life imprisonment enhancement can be applied to Anderson's § 846 conviction.

Anderson contends, however, that one of the two prior felony drug convictions relied on by the government cannot count as a predicate offense under § 841(b)(1)(A). See 21 U.S.C. § 851(c). He argues that his 1996 North Carolina felony drug conviction was obtained in violation of the Constitution's prohibition against double jeopardy. Anderson notes that prior to his North Carolina conviction, the state assessed and collected a portion of its drug tax against him with respect to the very drugs at issue in his conviction-- a fact the government has not disputed. See N.C. Gen. Stat. §§ 105-113.105 to 105-113.113 (1999). Anderson then notes that this circuit has held North Carolina's drug tax to constitute a criminal penalty for purposes of the Double Jeopardy Clause. See Lynn v. West, 134 F.3d 582, 588-93 (4th Cir.), cert. denied, 119 S. Ct. 47 (1998). As a result of the drug tax being a criminal penalty, Anderson argues, his subsequent state conviction violated the Double Jeopardy Clause.

The government argues that Anderson waived this claim. While we agree with the government that a double jeopardy claim can, at least in some circumstances, be waived, see United States v. Broce, 488 U.S. 563 (1989), we cannot conclude that there has been a waiver in this case. Anderson cannot be said to have waived his double jeopardy claim as it simply would have been futile for Anderson to have raised this claim in state court. Prior to Anderson's conviction on the drug charge, North Carolina courts had determined that the North Carolina drug tax was not a criminal penalty for purposes of the Double Jeopardy Clause. See State v. Ballenger, 472 S.E.2d 572, 572-75 (N.C. Ct. App. 1996), aff'd per curiam, 481 S.E.2d 84, cert. denied, 522 U.S. 817 (1997); State v. Creason, 473 S.E.2d 771, 772 (N.C. Ct. App. 1996), aff'd per curiam, 484 S.E.2d 525 (1997). A subsequent North Carolina case even pointed out that state courts were not bound by the Fourth Circuit Lynn v. West decision, but rather were bound by the state court pronouncements on the matter. See State v. Adams, 513 S.E.2d 588, 589 (N.C. Ct. App. 1999).

In this forum, to say the least, Lynn v. West is binding. And pursuant to Lynn v. West, Anderson's subsequent North Carolina drug con-

6

viction constituted double jeopardy. As a result, the conviction cannot be used as a predicate offense under § 841(b)(1)(A). We thus vacate Anderson's sentence and remand for resentencing under the applicable sentencing guidelines.

IV.

For the foregoing reasons, we affirm Anderson's conviction and affirm his sentence in part and vacate in part. We remand for resentencing under the applicable sentencing guidelines.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

7