PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DANNY SYLVESTER VICK,
            *Petitioner-Appellant,*

v.

JOHN R. WILLIAMS, in his official
capacity as Superintendent of the
Tillery Correctional Institution,
North Carolina Department of
Corrections,

            *Respondent-Appellee.*

No. 99-7406

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-99-143-5-BR(2))

Argued: September 26, 2000

Decided: November 20, 2000

Before WILKINS and LUTTIG, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Luttig wrote the opinion, in
which Judge Wilkins and Senior Judge Hamilton joined.

_____

## COUNSEL

**ARGUED:** George Bullock Currin, Raleigh, North Carolina, for
Appellant. Clarence Joe DelForge, III, Assistant Attorney General,

NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Michael F. Easley, Attorney General, Diane A. Reeves, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee.

---

### OPINION

LUTTIG, Circuit Judge:

Petitioner-appellant Danny Sylvester Vick, a North Carolina inmate, appeals from the district court's denial of his application under 28 U.S.C. § 2254 for a writ of habeas corpus. Vick asserts that the North Carolina Controlled Substance Tax, N.C.G.S. § 105-113.105, *et seq.* ("Drug Tax"), is a criminal penalty, so that a subsequently imposed sentence of imprisonment for trafficking cocaine, after the prior assessment of the Drug Tax for the cocaine in Vick's possession upon arrest, constituted multiple punishment for the same criminal offense. Consequently, Vick claims, the state court's decision to deny his motion to dismiss the drug charges on double jeopardy grounds was contrary to, or an unreasonable application of, *Montana Dept. of Revenue* v. *Kurth Ranch*, 511 U.S. 767 (1994). Whether in this Circuit's opinion the North Carolina Drug Tax is — or is not — a criminal penalty, the district court correctly denied Vick's petition for habeas relief because the state court's decision was neither contrary to, nor an unreasonable application of *Kurth Ranch*. Accordingly, we affirm the district court's judgment denying Vick's petition for a writ of habeas corpus.

### I.

After the Raleigh Police Department Drug and Vice Task Force ("RPD") received information that Vick was involved in the illegal distribution of cocaine, RPD detectives observed Vick delivering cocaine to an informant on March 11, 1996, and again on May 8, 1996. Subsequently, the RPD obtained a search warrant and found 211 grams of cocaine hidden inside Vick's refrigerator. Vick was arrested and charged with multiple counts of trafficking cocaine.

The cocaine concealed inside Vick's refrigerator did not have revenue stamps affixed to it to indicate that the North Carolina Controlled Substance Tax ("Drug Tax") had been paid. N.C.G.S. § 105-113.107. Therefore, the North Carolina Department of Revenue served Vick with a Notice of Controlled Substance Tax Assessment in the amount of $63,616.50, which included interest, and a penalty equal to fifty percent of the tax, or $21,000, for failure to pay the tax when due. N.C.G.S. § 105-113.110A. To satisfy this assessment, the North Carolina Department of Revenue immediately placed a lien on all of Vick's real property and seized numerous items of personal property, as provided for by N.C.G.S. § 105-113.111.

Several months later, Vick was indicted by the Wake County Grand jury for two counts of trafficking cocaine by transportation, three counts of trafficking cocaine by possession, and two counts of trafficking cocaine by sale and delivery. Some of these charges related to the cocaine against which the state had already assessed the Drug Tax on May 8, 1996, the date the drugs were discovered in Vick's possession. Vick filed a motion to dismiss all criminal charges against him on double jeopardy grounds, claiming that the criminal charges constituted a second punishment in addition to the Drug Tax assessment and attendant seizure and confiscation of his property. The state trial court denied the motion.[1] Relying on *State* v. *Ballenger*, 472 S.E.2d 572 (N.C. Ct. App. 1996), *aff'd per curiam*, 481 S.E.2d 84 (N.C. 1997), *cert. denied*, 522 U.S. 817 (1997), a case in which the North Carolina Appeals Court directly applied *Kurth Ranch* to the North Carolina Drug Tax and concluded it was not a criminal penalty, the state trial court denied Vick's motion, holding that the North Carolina Drug Tax "does not constitute punishment," but, rather, is "a remedial effort to recover revenue and does not have the punitive characteristics which would render it punishment for purposes of double jeopardy analysis." J.A. 45A-B.

Vick gave written notice of his intent to appeal, *inter alia*, the trial court's denial of his motion to dismiss on double jeopardy grounds.[2]

---

[1]The motion was summarily denied. However, the court entered a written order explaining the bases for its decision on June 17, 1997. J.A. 45A-B.

[2]Vick has not pursued his Fourth Amendment claim in his appeal. We therefore do not consider this claim.

The next day Vick entered guilty pleas to all seven counts of trafficking cocaine and was sentenced to two consecutive terms of a 35-42 month sentence. Subsequently, the North Carolina Court of Appeals and North Carolina Supreme Court denied discretionary review of Vick's double jeopardy claim without written opinion. Having exhausted his state court remedies, Vick timely filed the instant petition in federal district court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court dismissed Vick's habeas petition.

## II.

Vick's petition for federal habeas relief is governed by the standards for federal habeas relief as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1214. The writ may issue only if Vick demonstrates that the state court's denial of his motion to dismiss on double jeopardy grounds "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as established by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

*Williams* v. *Taylor*, ___ U.S. ___, 120 S. Ct. 1495, 1523 (2000), described the standard of review governing applications under 28 U.S.C. § 2254, and the analysis we must undertake to determine whether the trial court's denial of Vick's motion to dismiss on double jeopardy grounds warrants granting of the writ.[3] Under the "contrary to" clause of section 2254, "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently from [the Supreme] Court on a set of materially indistinguishable facts," the federal court may grant the writ of habeas corpus. *Id*. at 1523. A state court decision is "contrary to" clearly established Federal law as determined by the Supreme Court if it is "'diametrically different,' 'opposite in character or nature,' or 'mutually opposed'." *Williams*, 120 S. Ct. at 1519. A state court decision is also contrary to "clearly established Federal law" as determined by the Supreme Court if "the state court confron-

---

[3]In *Williams*, the Court adopted much of this court's earlier construction of section 2254(d)(1), as set forth in *Green* v. *French*, 143 F.3d 865 (4th Cir. 1998). *See Williams*, 120 S. Ct. at 1519-20; *Oken* v. *Corcoran*, 220 F.3d 259, 263-64 (4th Cir. 2000).

t[ed] a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams*, 120 S. Ct. at 1519-20; *see also Green*, 143 F.3d at 870 (same).

The alternative, "unreasonable application" of "clearly established Federal law," basis for granting the writ lies, and a federal habeas court may grant the writ, "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S. Ct. at 1523. *See also Green*, 143 F.3d at 870. Under section 2254(d)(1), as interpreted by *Williams*, a writ may not issue because a federal court concludes, in its own judgment, that the state court decision applied federal law "erroneously or incorrectly." *Id*. Rather, the state court's application must be objectively unreasonable.

III.

Vick has steadfastly maintained that the assessment of the North Carolina Controlled Substance Tax and the attendant seizure of his property on May 8, 1996, constituted criminal punishment, so that his sentence of imprisonment for trafficking cocaine in a separate and subsequent criminal proceeding, based in part on the same drugs upon which the Drug Tax was assessed, constituted multiple punishment in violation of the Double Jeopardy clause of the Fifth Amendment. Specifically, Vick claims that the Supreme Court's decision in *Kurth Ranch* clearly establishes that the North Carolina Drug Tax is a criminal penalty, so that the state court's denial of his motion to dismiss on double jeopardy grounds is contrary to federal law as established by the Supreme Court. In Vick's view, *Kurth Ranch* establishes the

> broader legal principle that a person may not be subjected to both assessment of the drug tax and additional criminal punishment for the same offense in a separate proceeding by the same sovereign without violating the Double Jeopardy Clause's prohibition against multiple punishments.

Appellant's Brief at 10.

In further support of his constitutional claim, Vick argues that this court is bound to find that *Kurth Ranch* is not materially distinguishable from the facts of this case because of our holding in *Lynn* v. *West*, 134 F.3d 582, 592 (4th Cir. 1998) — a civil case on direct appeal — that the North Carolina Drug Tax "contains no features that allow us to distinguish *Kurth Ranch*," and includes "enough positive features that its nature is that of a criminal penalty, not a civil tax." *Id*. Alternatively, Vick insists that *Lynn* requires us, at a minimum, to determine that the North Carolina trial court's decision was an unreasonable application of *Kurth Ranch*.

These claims, without exception, ultimately fail to meet the requirements for relief under section 2254(d)(1). Vick's criticism of the North Carolina trial court's decision rests, in the first instance, on an incorrect view of what constitutes "clearly established Federal law" as "determined by the Supreme Court." Moreover, Vick misapprehends the very real constraints AEDPA places "on the power to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams*, 120 S. Ct. at 1523. Based upon our own independent view of the applicable law, we cannot conclude that the North Carolina trial court's reliance on *Ballenger* and its rejection of Vick's double jeopardy claim was "contrary to or an unreasonable application of" "clearly established Federal law," "as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A.

In the first place, while it is true that *Kurth Ranch* constitutes "clearly established Federal law" as "determined by the Supreme Court," we cannot say that the state court's decision that the North Carolina Drug Tax was not a criminal penalty was *contrary* to *Kurth Ranch* without doing violence either to the Supreme Court's definition of "contrary to" or to the holding of *Kurth Ranch* itself. A careful review of the Supreme Court's actual holding, coupled with recognition that issues reserved are neither "Federal law" as determined by the Supreme Court," nor appropriate support for claims of material likeness to established Supreme Court precedent, makes it apparent that this is so.

*Kurth Ranch* involved a challenge to a Montana statute that, like the North Carolina Drug Tax, assesses a high rate of tax on controlled substances. Vick insists that *Kurth Ranch* stands for the proposition that a person may not be subjected to both assessment of a drug tax and additional criminal punishment in separate proceedings without violating the double jeopardy clause's prohibition against multiple punishments. Therefore, Vick concludes, the state court's denial of his motion to dismiss on double jeopardy grounds was contrary to *Kurth Ranch*. However, *Kurth Ranch* does not stand for the categorical proposition that Vick contends it does. Rather, in *Kurth Ranch*, the Court held only that a legislature's description of a statute as civil does not *foreclose* the possibility that it has a punitive character, and concluded that "a tax is not immune from double jeopardy analysis simply because it is a tax." 551 U.S. at 778-79.

The Supreme Court then evaluated specific "unusual features" of the Montana Drug Tax consistent with a punitive character, concluding ultimately that the assessment of *Montana's Dangerous Drug Tax* (which in that case followed rather than preceded the criminal drug charges) constituted a "second punishment" for purposes of the Double Jeopardy Clause. 511 U.S. at 783-84. Simply put, *Kurth Ranch* does not stand for a general principle that *all* drug taxes are punishment — rather than a civil penalty — but holds instead that the "unusual features" of the Montana tax caused it to differ from an ordinary tax to the point it was a criminal penalty rather than civil assessment.

Vick does not claim that the state court that denied his motion to dismiss held that a drug tax could never be a criminal penalty, or that *Ballenger* ignored or contradicted the relevance of the "unusual features" of the Montana Drug Tax which the Court in *Kurth Ranch* relied upon in determining that the Montana tax was punishment. And, in fact, *Ballenger*, which the trial court relied upon in adjudicating Vick's motion to dismiss, directly applied *Kurth Ranch* to the North Carolina Drug Tax. *Ballenger* thus recognized that a tax could be considered punishment but, following the multi-factor analysis set forth in *Kurth Ranch*, and grounded in its own construction of the North Carolina statute as compared with the Montana statute, determined that North Carolina's Drug Tax did not constitute criminal punishment. Consequently, we cannot say that the state court's denial of Vick's motion is directly opposed, or contrary to, *Kurth Ranch*

under *Williams* or *Green*, because the state court did not apply a "rule that contradicts the governing law set forth in [Supreme Court precedent]." *Id.*

Vick's assertion that the state court's decision was "contrary to" *Kurth Ranch* because the facts are "materially indistinguishable" is similarly without merit. While the North Carolina Drug Tax at issue in this case is itself materially distinguishable from the Montana Drug Tax at issue in *Kurth Ranch* on the basis of statutory language, *see infra* at 9-10, we need not reach that issue to determine conclusively that the North Carolina trial court's denial of Vick's motion to dismiss was not "contrary to" *Kurth Ranch* because the Supreme Court has never even decided the question whether a criminal proceeding would be barred by the prior assessment of a tax deemed to constitute criminal punishment. Rather, having determined that imposition of the Montana Drug Tax was barred by a prior criminal prosecution, the *Kurth Ranch* majority specifically noted that "the statute here does not raise the question whether an ostensibly civil proceeding that is designed to inflict punishment may bar a subsequent proceeding that is admittedly criminal in character." 511 U.S. at 781-82 n.21. Accordingly, even assuming arguendo that the North Carolina Drug Tax in fact constitutes a "civil proceeding that is designed to inflict punishment," the applicable "clearly established Federal law [ ]as determined by the Supreme Court" specifically *reserves* the question of whether that punishment would bar a subsequent criminal proceeding. To assume that an issue expressly reserved by the Supreme Court represents "clearly established" law as to that issue,

> [w]ould transform habeas review under amended 2254(d)(1) into a one-way ratchet whereby a state court must resolve all open questions of federal law in the defendant's favor in order to prevent the conviction or sentence from being vacated on habeas review.

*Green*, 143 F.3d at 880. This we decline to do.

We are similarly constrained from relying upon *Lynn* as the "clearly established Federal law" Vick seeks. Vick contends that the state court's decision in this case was contrary to *Kurth Ranch* because "[this] Honorable Court has already answered the pivotal

question of whether the North Carolina Substance Tax is 'indistinguishable in any material way' from the drug tax in *Kurth Ranch*." Appellant's Brief at 31. Consequently, Vick contends, there is "absolutely no difference between the analysis of the North Carolina tax in *Lynn* v. *West* and the analysis required in [this] case." *Id*. at 33.

While it is true that *Lynn* interpreted the North Carolina Drug Tax in the context of a direct appeal of a section 1983 case, and concluded that "the Drug Tax contains no features that allow us to distinguish *Kurth Ranch*," *Lynn*, 134 F.3d at 592, Vick's reliance on *Lynn* for purposes of habeas review is misplaced. *Lynn* is not "clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). Consequently, a contrary conclusion by the state court is unaffected by *Lynn*; as we noted at the outset, the question on federal habeas review of this state court decision simply is not whether this Circuit believes that the North Carolina Drug Tax, is, or is not, a criminal penalty. *See also State* v. *Adams*, 513 S.E.2d 588 (N.C. App. 1999), *cert. denied*, ___ U.S. ___, 120 S. Ct. 534 (1999) (federal appellate decisions such as *Lynn* are not binding upon the North Carolina courts); *Milligan* v. *North Carolina*, 522 S.E.2d. 330, 331 n.2 (N.C. App. 1999) (expressly declining to be bound by *Lynn* because it is not a decision of the United States Supreme Court).

In fact, *Lynn* illustrates the circumstance clearly contemplated and rejected for purposes of habeas review by the Supreme Court in *Williams*. That a "state-court decision [actually is] contrary to the federal court's conception of how [*Kurth Ranch*] ought to be applied in that particular case," does not render the state court decision "contrary to" federal law as established by the Supreme Court. *Williams*, 120 S. Ct. at 1520. That this is true is particularly clear given the Court's explicit rejection of Justice Stevens' much more expansive reading of section 2254's "contrary to" clause, an interpretation that would have allowed a "federal habeas court . . . under the 'contrary clause' [to] issue the writ whenever it concludes that the State court's application of clearly established federal law was incorrect." *Id*.

On these facts, we do not find that the North Carolina trial court's decision is "opposite in character" or "mutually opposed" to the actual holding in *Kurth Ranch*. *Williams*, 120 S. Ct. at 1519. Moreover, the "clearly established Federal law" set forth in *Kurth Ranch* expressly

reserved the question of whether double jeopardy would apply to the facts extant in this case, and we thus cannot say that the cases are "materially indistinguishable." We are, accordingly, convinced that the state court did not act "contrary to" "clearly established Federal law" "as determined by the Supreme Court," irrespective of the *Lynn* court's contrary interpretation of *Kurth Ranch*. *See also French* v. *Green*, 143 F.3d at 882 (counterfactual to believe that section 2254(d)(1) permits the award of habeas relief "based upon an inconsistency between our precedents and the state court's decision").[4]

B.

Not only is it apparent that the "Federal law" Vick claims was violated has not been established by the Supreme Court, let alone clearly established, let alone subject to a "contrary" application by the North Carolina courts in this case, Vick's claim to habeas relief also fails the alternative, "unreasonable application" of "Federal law" basis for granting the writ. Vick, again, places great weight on *Lynn* for his tertiary claim that the state court's decision, at a minimum, implicates the "unreasonable application" clause of section 2254(d)(1). However, *Lynn* does not purport to stand for the proposition that the state court's application of federal law in *Ballenger* was an "objectively unreasonable" interpretation of *Kurth Ranch*, as that phrase is explained in *Williams*. *See Williams*, 120 S. Ct. at 1522. While the court in *Lynn* was unable to distinguish the North Carolina Drug Tax from the Montana Drug Tax at issue in *Kurth Ranch* for purposes of its inquiry on direct appeal, it did not hold that it would be objectively unreasonable to distinguish the statutes. Rather, *Lynn* stands only as a single federal court's independent application of *Kurth Ranch* to the North Carolina Drug Tax, an analysis that, moreover, considered the Drug Tax as applied. *See Lynn*, 134 F.3d at 591 (noting the statutory differences and determining that the statutory reporting and payment schemes were "clever" but not clever enough). We stress, as we must on habeas review, that a state court's decision may be objectively reasonable even where, as here, a federal court deciding the issue on direct appeal would come to a different conclusion.

---

[4]Of course, the continued validity of our decision in *Lynn* v. *West* is not called into question by our decision today.

And, ultimately, Vick cannot show the required "unreasonable application of" "Federal law" as "established by the Supreme court" because, as carefully determined by the North Carolina Court of Appeals in *Ballenger*, and confirmed by our own independent review of the statutes and applicable law, the Drug Tax at issue in *Kurth Ranch* differs from the North Carolina Drug Tax in at least two significant respects.[5] There is no doubt that the holding in *Kurth Ranch* rested on a statute-based multi-factor inquiry into the Montana Drug Tax itself, and that the Supreme Court focused on "unusual features [which] set the Montana statute apart from most taxes," and which were dispositive.[6] *Id*. at 783.

First, the Court found distinctive the fact that the "so-called tax is conditioned on the commission of a crime," and exacted "only after the taxpayer has been arrested for the precise conduct that gives rise to the tax obligation in the first place." *Id*. at 781. Second, the Montana Drug Tax was a "tax on the possession and storage of dangerous drugs [but] is levied on goods that the taxpayer neither owns nor possesses when the tax is imposed [after arrest, when the drugs have been confiscated and destroyed]." *Id*. at 783. In contrast, the North Carolina Drug Tax

> contains neither of the "unusual features" upon which the Supreme Court relied in *Kurth Ranch* . . . [the North Carolina Drug Tax] is not predicated upon whether the taxpayer in possession of the controlled substance has been arrested or charged with criminal conduct, nor is it assessed on property that has necessarily been confiscated or destroyed.

*Ballenger*, 472 S.E.2d at 574.[7]

---

[5]Moreover, as discussed *supra* at 8, we cannot say it was objectively unreasonable not to extend the holding of *Kurth Ranch* to a fact situation that the Court itself expressly reserved ruling upon.

[6]The Court made clear that "while a high tax rate and deterrent purpose lend support to the characterization of the drug tax as punishment, these features in and of themselves do not necessarily render the tax punitive." 511 U.S. at 781.

[7]*Ballenger* acknowledged that the North Carolina Drug Tax was imposed at a high rate and had a deterrent intent, but noted that these factors alone did not make the Drug Tax a criminal penalty. 472 S.E.2d at 575.

In our view, the trial court's reliance on *Ballenger's* interpretation of *Kurth Ranch* to determine that the North Carolina Drug Tax, unlike the Montana Drug Tax, was not criminal punishment is not objectively unreasonable; we cannot say that the failure to find North Carolina's tax a criminal punishment is an unreasonable interpretation of *Kurth Ranch*, when that tax lacks the very factors relied upon by the Supreme Court to hold the Montana tax a criminal penalty.

And, in fact, it is the specific statutory features of the North Carolina Drug Tax that make it objectively reasonable to distinguish the state's tax from the Montana tax at issue in *Kurth Ranch*. *Id*. at 574-5. Most importantly, and unlike the Montana Drug Tax (for which the condition precedent was arguably arrest), the North Carolina Drug Tax is due and payable "within 48 hours after the dealer acquires actual or constructive possession of a non-tax-paid controlled substance." N.C.G.S. § 105-113.109. Thus, possession of an amount of controlled substance sufficient to make one a dealer, rather than arrest — the apparent sine qua non for imposition of the tax at issue in *Kurth Ranch* — is the operative fact upon which the North Carolina Drug Tax rests.

While it is true that the Supreme Court is not entirely clear in *Kurth Ranch* as to whether it was the tying of the tax to commission of the crime ("so-called tax commissioned on the commission of a crime"), or whether it was the conflation of arrest and tax liability ("tax assessment not only hinges on the commission of a crime, it is also exacted only after the taxpayer has been arrested"), which caused the Court to deem the tax a criminal penalty, it is not objectively unreasonable to read the holding in *Kurth Ranch* to turn upon the fact of arrest as a subset of criminal activity, rather than upon the fact of arrest as a synonym for "commission of a crime." This interpretation appears all the more reasonable given that the fact that conduct for which civil sanctions are imposed may also be criminal is itself "insufficient to render the [penalties] criminally punitive." *Hudson* v. *United States*, 522 U.S. 93, 105 (1997).

Moreover, while it is clear that only illegal possession of controlled substances is subject to the Drug Tax, N.C.G.S. § 105-113.107A(a), we do not conclude therefrom that it follows — as was the case in *Kurth Ranch* — that every discovered criminal possession necessarily

implicates a tax assessment. In the first instance, only dealers, defined as persons in actual or constructive possession of "more than 42.5 grams of marijuana, seven or more grams of any other controlled substance that is sold by weight, or 10 or more dosage units of any other controlled substance," N.C.G.S. § 105-113.106((3), are subject to the Drug Tax. N.C.G.S. § 105-113.107. Second, once the tax obligation is satisfied by any dealer and stamps are acquired from the Secretary of Revenue, N.C.G.S. § 105-113.108, the "dealer shall permanently affix the appropriate stamps to the controlled substance" and the stamps transfer to people who later come into possession of the controlled substance: "Once the tax due on a controlled substance has been paid, no additional tax is due under the Article even though the controlled substance may be handled by other dealers." N.C.G.S. § 105-113.109. Thus, under the North Carolina Drug Tax, a subsequent purchaser would be exempt from the Drug Tax if paid by the prior owner. The Montana Drug Tax at issue in *Kurth Ranch* contained none of these features focused on possession, as opposed to arrest, and we cannot say that the trial court's decision was an unreasonable application of *Kurth Ranch*.

Additionally, in *Kurth Ranch*, the Court found telling the fact that the "property tax" was assessed on "property" which was never in the taxpayer's possession at the time of the assessment because the drugs had been seized and destroyed. Under the Montana statute, the "taxpayer ha[d] no obligation to file a return or to pay any tax unless and until he [was] arrested." *Kurth Ranch*, 511 U.S. at 771. As noted above, the North Carolina Drug Tax is payable and due upon possession, and there is statutory provision for payment of the *excise tax* while the drugs are in the possession of the taxpayer, without any relationship to a criminal proceeding. N.C.G.S. § 105-113.109. In fact,

> [t]he tax obligation is not contingent upon the dealer's arrest which, in the normal course of events would result in the confiscation and destruction of the substance. The dealer can satisfy his tax obligation by paying the tax upon acquisition of the substance and by then permanently affixing thereto stamps issued by the Secretary of Revenue to indicate payment. . . . Because the North Carolina tax becomes payable within forty-eight hours after the taxpayer comes

into possession of the substance, it is not a tax on confis-
cated goods, as was the case with the Montana tax.

*Ballenger*, 472 S.E.2d. at 575. Furthermore, an anonymous report-
ing function by mail or in person is provided to obtain the tax stamps
by N.C.G.S. § 105-113.108, and information obtained under the Drug
Tax is protected from release by criminal sanctions for disclosure, and
by the exclusion of information or stamps obtained under the Drug
Tax from use in a criminal prosecution. N.C.G.S. § 105-113.112.
Failure to pay the tax when due (within 48 hours after acquisition)
subjects the dealer to a penalty equal to fifty percent of the tax, § 105-
113.110A, providing, on the face of the statute, some incentive for
paying the tax when due, rather than upon arrest.

Despite the statutory differences between the North Carolina and
Montana Drug Taxes, and North Carolina's conclusion that its Drug
Tax was distinguishable from the Montana Drug Tax based on the
absence of the two "unusual" indicia of criminal punishment deemed
dispositive by the Supreme Court, Vick nonetheless claims that the
state court decision was an "unreasonable application" of *Kurth
Ranch*. Vick attacks the bases upon which the state court distin-
guished the Montana Drug Tax, and claims that the North Carolina
Drug Tax was, as applied, enforced and assessed only against those
who, like the appellants in *Kurth Ranch*, actually were arrested and
had their drugs seized. J.A. 17. However, as recently affirmed by the
Supreme Court in *Hudson* v. *United States*, 522 U.S. 93 (1997), when
determining whether a statutory scheme is so punitive in nature that
it constitutes punishment for purposes of double jeopardy, a court
reviews the "statute on its face," and requires the clearest proof that
the civil remedy is, in fact, a criminal penalty in order to override leg-
islative intent. *Id.* at 100. Given *Hudson*'s emphasis on the primacy
of these factors, the *Ballenger* court's focus upon the provisions and
purpose of the North Carolina drug statute as written, and its finding,
based on a construction of the statute's language, that it was distin-
guishable from the Montana Drug Tax, and not a criminal penalty, is
reasonable. We cannot say, on these facts, that the state trial court
erred in denying Vick's motion to dismiss on double jeopardy
grounds in reliance on *Ballenger*'s conclusion that the Drug Tax is
not a criminal penalty.

Finally, although habeas relief under the "unreasonable application" provision of 28 U.S.C. § 2254(d)(1) requires that the state court decision be objectively unreasonable, nothing in *Williams* suggests or commands that this court make that determination in a vacuum. Where, as here, the otherwise objectively reasonable bases for a state court's interpretation of a given precedent are common to the reasoned decisions of many courts, it would be judicial myopia of the first order to ignore the force of consensus in assessing the objective reasonableness in the particular case. Consequently, while our independent review of the applicable law, the facts, and the district court's decision leads us to conclude that North Carolina did not unreasonably apply *Kurth Ranch* to the facts of this case, it would be remiss to ignore the other courts that have also distinguished *Kurth Ranch* — from drug taxes substantially similar to North Carolina's — because the tax is neither contingent upon arrest, nor assessed on property that has necessarily been confiscated or destroyed. *See Padavich* v. *Thalacker*, 162 F.3d 521, 523 (8th Cir. 1998), *cert. denied*, 527 U.S. 1025 (1999); *Covelli* v. *Commissioner of Revenue*, 668 A.2d 699 (Conn. 1995), *vacated and remanded*, 518 U.S. 1031 (1995), *prior opinion affirmed per curiam*, 683 A.2d 737 (Conn. 1996), *cert. denied*, 520 U.S. 1174 (1997); *Iowa* v. *Baehler*, 604 N.W.2d 601, *rehearing denied*, 604 N.W.2d 601 (Iowa 2000); *State* v. *Gulledge*, 896 P.2d 378 (Kan. 1995); *McMullin* v. *South Carolina Dept. of Revenue*, 469 S.E.2d 600 (S.C. 1996).

## *CONCLUSION*

The judgment of the district court dismissing Vick's petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 is affirmed.

*AFFIRMED*